IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CORRINA H.,[1]

           Plaintiff,

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

           Defendant.

No. 1:22-cv-00433-HZ

OPINION & ORDER

Betsy R. Shepherd
425 Riverwalk Manor Dr.
Dallas, GA 30132

    Attorney for Plaintiff

Kevin C. Danielson
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Jeffrey E. Staples
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Corrina H. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB and SSI on September 9, 2019, alleging an onset date of July 12, 2019. Tr. 223.[2] Plaintiff's date last insured ("DLI") is December 31, 2024. Tr. 16. Her application was denied initially and on reconsideration. Tr. 125–45.

      On March 9, 2021, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 33. On March 31, 2021, the ALJ found Plaintiff not disabled. Tr. 12-26. The Appeals Council denied review. Tr. 1-6.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on "rheumatoid arthritis; fibromyalgia; skin infections, lesions; signs of lupus; headaches; fatigue – no energy; and [her] body, head to toe, feels like it's burning." Tr. 252. At the time of her alleged onset date, she was 42 years old. Tr. 24. She has a

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 9.

2 – OPINION & ORDER

high school education and previously worked as a cashier, fast food worker, and gas station attendant. Tr. 21, 24.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work."

20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date of July 12, 2019. Tr. 18. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "lupus, fibromyalgia, obesity, and lumber degenerative disc disease." Tr. 19. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 20. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [T]he claimant can never climb ladders, ropes, or scaffolds and can frequently climb ramps and stairs. She must avoid concentrated exposure to extreme temperatures and hazards such as unprotected heights.

Tr. 21. Because of these limitations, the ALJ concluded that Plaintiff could not perform her past relevant work. Tr. 24. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "document preparer," "touchup screener," and "addresser." Tr. 25. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 26.

**STANDARD OF REVIEW**

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

**DISCUSSION**

Plaintiff argues that the ALJ erred by: (1) finding Dr. David Dryland's opinions unpersuasive; (2) finding that Plaintiff's impairments do not meet or equal Listing 14.02; and (3) rejecting Plaintiff's subjective symptom testimony. The Court disagrees.

**I.    Opinion of David Dryland, MD**

Plaintiff argues that the ALJ erred in finding the opinion of David Dryland, MD, unpersuasive. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20

C.F.R. §§ 404.1520c, 416.920c. Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Dr. Dryland treated Plaintiff between October 23, 2019, and February 16, 2021. Tr. 362-545. In a February 2020 form submitted to Social Security, Dr. Dryland opined that Plaintiff could lift two to five pounds occasionally, walk or stand one to two hours per eight-hour workday, and sit two to three hours in an eight-hour day. Tr. 396. Dr. Dryland indicated his restrictions were based on patient complaints and objective findings, but he only elaborated that his findings were based in Plaintiff's "somewhat severe lupus." Tr. 396. As to the effects of

Plaintiff's pain and fatigue, Dr. Dryland only explained that Plaintiff had "severe form lupus." Tr. 396. He wrote that these restrictions began in July 2019. Tr. 397.

In 2021, Dr. Dryland filled out another medical opinion form. Tr. 540-45. In the 2021 opinion, Dr. Dryland opined that Plaintiff meets the diagnostic criteria for systemic lupus erythematosus. Tr. 540. He identified specific lab results that show the severity of her conditions and identified three constitutional symptoms of her lupus: severe fatigue, fever, and malaise. Tr. 540. He also indicated that the following body systems are involved in Plaintiff's condition "at least to a moderate degree": hematologic, immune, and skin. Tr. 541. Dr. Dryland opined that Plaintiff was unable to work in a competitive work situation because of her lupus, that she would be off task at least 25% of a workday, and she was incapable of tolerating even low-stress work. Tr. 541, 543. Dr. Dryland concluded Plaintiff was moderately limited in activities of daily living and social functioning, but markedly limited in concentration, persistence, and pace. Tr. 544. According to Dr. Dryland, she would miss more than four days of work per month. Tr. 544. This form also contained specific questions regarding the extent of Plaintiff's functional limitations. Tr. 540-45. Rather than answering these questions, Dr. Dryland repeatedly wrote "can't work" in the margin. Tr. 541-43.

The ALJ found that neither of Dr. Dryland's opinions were persuasive. First, the ALJ found that the limitations in the 2020 opinion are inadequately supported. Tr. 23. Specifically, the ALJ emphasized that Dr. Dryland's report "simply states that the claimant has 'somewhat severe lupus' but did not explain how her conditions cause these limitations." Tr. 23. The ALJ also found that Dr. Dryland's 2020 opinion was "inconsistent with the record as a whole," which documents "normal or nearly normal physical functioning." Tr. 23. Second, the ALJ emphasized that the 2021 opinion stated that Plaintiff "can't work" in lieu of identifying specific exertional

7 – OPINION & ORDER

and postural limitations. Tr. 23. The ALJ also noted that Dr. Dryland "did not explain the basis for the limitations on productivity, stress tolerance, and excess absences he assessed," which lack support from the clinical findings that show intact physical functioning and do not document excess fatigue. Tr. 23-24. The ALJ also noted that the mental limitations assessed by Dr. Dryland are "inconsistent with the record evidence, … which shows that the claimant's mental impairments cause no more than mild limitations." Tr. 24.

The ALJ did not err in finding Dr. Dryland's opinion unpersuasive. First, the ALJ correctly found Dr. Dryland's opinions inadequately supported. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020); *see also Coleman v. Saul*, 979 F.3d 751, 757 (9th Cir. 2020) (ALJ did not err in rejecting medical opinions that were unsupported by the objective medical evidence). The answers in Dr. Dryland's medical opinions were brief and conclusory. Dr. Dryland's 2020 opinion simply concludes Plaintiff has "severe lupus" but does not explain how Plaintiff's lupus caused her limitations or contain any objective clinical findings. Tr. 396-97. Dr. Dryland's 2021 opinion is similarly brief, with "can't work" written in the margin repeatedly instead of answers to specific questions pertaining to Plaintiff's limitations. Tr. 540-45. In sum, Dr. Dryland only produced short and conclusory opinions in his 2020 and 2021 reports by writing "severe lupus" and "can't work." As a result, the ALJ correctly rejected Dr. Dryland's medical opinions as conclusory.

Second, the ALJ did not err in finding Dr. Dryland's opinions inconsistent with and unsupported by the record. An ALJ may reject medical source opinion evidence that is inconsistent with other medical opinions of record or inconsistent with the objective medical evidence. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding the ALJ did

not err in rejecting a medical opinion that was inconsistent with objective medical evidence and another medical opinion of record). This rationale also applies to a medical source opinion that is inconsistent with that source's own treatment records. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014); *see* 20 C.F.R. §§ 404.1520c(a), 916.920c(a) (consistency with the record evidence is most important factor in determining persuasiveness of medical opinion) (new rules).

      Here, the ALJ's findings are supported by substantial evidence. Plaintiff's subjective physical complaints to Dr. Dryland are limited, noting pain and stiffness in her shoulders, hips, and knees that "lessened a lot" and became "much better" with medication within her first two appointments.[3] *See* Tr. 362, 377, 399, 415, 521, 527. These complaints are also inconsistent with the objective findings in the record, which document normal gait, stability, range of motion, and strength in all joints. *See* Tr. 364, 379, 428. Similarly, Plaintiff's reported fatigue improved over the span of a few months in 2020 with medication. *See* Tr. 425, 521. Plaintiff also does not report any cognitive or mental health issues to Dr. Dryland, and his objective findings do not reflect any psychiatric or neurocognitive issue stemming from Plaintiff's lupus. *See, e.g.* Tr. 364, 379, 402, 428 ("Mood appears normal. Memory appears intact. Patient alert and oriented X3."). Altogether, the medical records are inconsistent with and do not support the significant physical limitations assessed by Dr. Dryland, including Dr. Dryland's opinion that Plaintiff could only walk or stand for one to two hours in an eight-hour day, that Plaintiff does not have enough stamina to complete a normal workday, and that she would miss four or more days per work month. Tr. 396, 544. And there is no support in the record for the moderate and marked limitations assessed by Dr. Dryland in maintaining attention and concentration, tolerating work

---

[3] The Court also notes that the ALJ did not err in rejecting Plaintiff's subjective symptom testimony.

9 – OPINION & ORDER

stress, maintaining social functioning, or in concentration, persistence, and pace. Tr. 543-44. Accordingly, the ALJ did not err in finding Dr. Dryland's opinions unpersuasive.

**II.     Step Three: Listing 14.02**

Plaintiff contends the ALJ failed to properly address that her Systemic Lupus Erythematosus does not meet or equal Listing 14.02. If a claimant meets or medically equals a listed impairment at step three of the sequential analysis, he is presumed disabled regardless of age, education, or work experience. 20 C.F.R. § 404.1520(a)(4)(iii), (d). An impairment, or combination of impairments, is medically equivalent to a listing "if it is at least equal in severity and duration to the criteria of any listed impairment," considering, "all evidence in [the] case record about [the] impairment(s) and its effects on [the claimant] that is relevant[.]" 20 C.F.R. § 404.1526(a), (c). "[T]he claimant's illnesses 'must be considered in combination and must not be fragmentized in evaluating their effects.'" *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995) (quoting *Beecher v. Heckler*, 756 F.2d 693, 694–95 (9th Cir. 1985)). "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Id*.

Plaintiff appears to rest her argument that she meets Listing 14.02 for Systemic Lupus Erythematosus on the opinions of Dr. Dryland and cited no other medical evidence or opinion in support of her claim. Pl. Br. 6,7. The ALJ, however, has properly rejected the opinions of Dr. Dryland. *See supra* Part I. Accordingly, Plaintiff has not demonstrated that the ALJ erred in finding Plaintiff failed to meet Listing 14.02.

Plaintiff also argues the ALJ erred in failing to articulate a proper rationale for finding Plaintiff's impairments did not equal Listing 14.02. Pl. Br. 6. (citing *Marcia v. Sullivan*, 900 F.2d 172 (9th Cir. 1990) (holding that in determining whether a claimant suffers from disability equivalent to a listed impairment, the ALJ must adequately explain his evaluation of alternative tests and of combined effects of claimant's impairments; a statement that claimant does not equal listing is not sufficient.)). The Ninth Circuit, however, has clarified that an ALJ's failure to make detailed findings at step three does not constitute reversible error if the ALJ discusses the record in other portions of the decision. *See Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (distinguishing *Marcia* to determine that the ALJ did not err at step three by "failing to elaborate on his determination that [the claimant's allegedly disabling physical and mental impairments] did not meet or equal" a listing where the ALJ otherwise "discussed and evaluated evidence supporting his conclusion"). Here, the ALJ has already addressed the medical evidence and Dr. Dryland's opinions—the only evidence cited by Plaintiff to support her step three argument—in other parts of the decision. *See* Tr. 23-24. Hence, the ALJ did not err by not providing an explanation for finding Plaintiff's impairments did not meet Listing 14.02.

**III.    Subjective Symptom Testimony**

Plaintiff argues the ALJ erred in rejecting her subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no

evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (the reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

In December 2018, Plaintiff experienced an allergic reaction that allegedly triggered her illnesses when she was working at Walmart. Tr. 42. Plaintiff started decreasing her work hours in January 2019, until she quit her job on July 12, 2019. Tr. 42. She testified that she can no longer work full-time because of her unpredictable condition. Tr. 48. At the hearing, she said she never knew whether her condition would worsen or improve the next day. Tr. 48.

Plaintiff also suffers from brain fog, skin rash, and body aches, especially in her neck and shoulders. Tr. 49-50. She testified that the brain fog makes it difficult to read, write, think, or concentrate. Tr. 48. When her skin rash flares up, it manifests as sores all over the face with pus coming out. Tr. 49. The body aches make her "[howl] in pain" and cry. Tr. 49. Plaintiff also

experiences pain in her knees, hips, ankles, and legs. Tr. 49. She stated that the body aches are getting worse and more noticeable. Tr. 49.

Plaintiff testified that she has three bad days out of a month and that she doesn't have good days, only moments. Tr. 51. On the average bad day, Plaintiff gets up around 7 a.m. and takes her medicine. Tr. 50. She feels fine for a minute, but eventually she goes back to bed. Tr. 50. She cannot sleep when lying in bed because of pain and fatigue. Tr. 50. She often takes long naps during the day. Tr. 61. Plaintiff lives with her husband and two sons. Tr. 40. Her husband helps her with cooking, cleaning, and other physical duties. Tr. 280. She sometimes helps with household chores, such as washing dishes and vacuuming, but she must do everything in two-minute increments. Tr. 54. She does not cook or prepare meals for herself or others. Tr. 55. In Plaintiff's function report, she stated that her condition makes it too painful to go anywhere or do anything. Tr. 284.

The ALJ rejected Plaintiff's subjective symptom testimony because her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 22. Specifically, the ALJ found (1) the medical evidence does not corroborate Plaintiff's allegations of disabling limitations and (2) the records show that treatment has improved Plaintiff's condition.

The ALJ is instructed to consider objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence … is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Inconsistency between Plaintiff's testimony and the objective medical record is a valid reason to discount Plaintiff's testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding where the plaintiff's testimony of

weight fluctuation was inconsistent with the medical record). The ALJ may also take into account the effectiveness of any treatment. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) ("Factors that the adjudicator may consider when making such credibility determinations include the … effectiveness or adverse side effects of any pain medication.").

Here, the ALJ concluded that Plaintiff's testimony is inconsistent with and unsupported by the medical record. Tr. 22. First, the ALJ acknowledged that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms she alleges. Tr. 22. But he went on to emphasize medical records that show largely intact physical functioning despite her conditions. Tr. 22. The ALJ summarized his findings as follows: "Overall, the objective medical findings in the record do not corroborate the claimant's allegations of debilitating limitations, and instead show intact or nearly intact musculoskeletal functioning." Tr. 22. He also emphasized medical records that show Plaintiff's memory is intact. Tr. 22. Second, the ALJ found that Plaintiff's condition has improved with treatment. Tr. 22. In making this finding, the ALJ pointed to medical evidence that documents Plaintiff's consistent improvement from January 2020 to January 2021. Tr. 22.

The ALJ did not err in finding Plaintiff's testimony inconsistent with and unsupported by the medical record. Even though Plaintiff reports extreme fatigue and widespread pain, the records show largely intact musculoskeletal functioning. Tr. 364, 379, 402, 428, 433, 530. Specifically, Plaintiff's function report alleged difficulty with lifting, squatting, bending, standing, reaching, walking, standing, kneeling, stair-climbing, memory, completing tasks, concentration, and using hands. Tr. 284. Plaintiff also wrote that she "can't lift, squat, bend, stand, reach, walk, climb …without being in pain or for any duration of time." Tr. 284. And during a rheumatologic consultation on October 23, 2019, Plaintiff reported severe fatigue and

14 – OPINION & ORDER

widespread pain, especially in her shoulders, hips, and knees. Tr. 362. However, Plaintiff's musculoskeletal examinations consistently showed normal gait and good stability, range of motion, and strength in all joints. Tr. 364, 379, 402, 428, 433, 530. Similarly, at the hearing, Plaintiff talked about having brain fog and how it caused her to forget how to write and do simple math. Tr. 48. But the medical records consistently show that Plaintiff's memory is intact, and providers have not observed the alleged cognitive limitations. Tr. 364, 379, 402, 428, 433, 530. Accordingly, the ALJ's finding that Plaintiff's testimony is inconsistent with and unsupported by the medical record is clear, convincing, and supported by substantial evidence.

The ALJ also correctly found that Plaintiff's condition has improved with treatment. Plaintiff testified that overall, her condition was getting worse. Tr. 56. Yet Plaintiff's medical records show that her symptoms have improved, and her medication was reduced. On January 15, 2020, during a rheumatology visit, Plaintiff reported mild improvement with medication. Tr. 377. On February 13, 2020, Plaintiff told her doctor that she was starting to get better, and her prednisone dosage was reduced. Tr. 430. On April 23, 2020, she reported that she was much better, and her prednisone dosage was reduced yet again. Tr. 425. On July 23, 2020, she reported improvement in her lungs. Tr. 521. Finally, on January 20, 2021, she was "much better overall still."[4] Tr. 528. Accordingly, the ALJ did not err in rejecting Plaintiff's subjective symptom testimony.

///

///

///

---

[4] Plaintiff also argues that her medication caused side effects, such as weight gain, dryness, and dizziness. Plaintiff does not explain how the side effects were not already captured by residual functional capacity or how they would otherwise change the outcome in this case.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED:‌<u>September 26, 2023</u>.

<u>/s/ Marco Hernandez</u>
MARCO A. HERNÁNDEZ
United States District Judge

16 – OPINION & ORDER